[No. C.D. 3832.  En Banc.  December 24, 1980.]

*In the Matter of the Disciplinary Proceeding Against* ANTHONY T. RESSA, *an Attorney at Law.*

*Kurt M. Bulmer,* for Bar Association.

*T. Hughlon McDowell,* for respondent.

UTTER, C.J.—Anthony T. Ressa, age 60, was admitted to practice in this state in 1951. He is before this court upon a

recommendation by the disciplinary board of the Washington State Bar Association that he be disbarred for failing to preserve his clients' funds. We order, because of the unique facts in this case, that Mr. Ressa be suspended from practice for 1 year and that this order be suspended on the condition that he pay all costs and attorney's fees accrued to date by the bar association.

Sometime prior to October 1975, Mr. Ressa used funds from his trust account to meet a short-term cash flow problem in his practice. He took approximately $14,000 from one client's estate funds and $1,250 belonging to another. He testified he would have repaid the account from earned fees had a major judgment he had won at trial not been later reversed. When contacted regarding the shortages, he expressed remorse, made all his records available to the bar association, and sold his family home to make full restitution.

The bar association filed a formal complaint in December 1976, but the disciplinary hearing was not held until January 1979. During the intervening period, Mr. Ressa participated in an experimental program offered by the association. In his case, the disciplinary hearings were held in abeyance in exchange for his agreement to pay for a professional audit of his trust account. Throughout this period, he diligently practiced law and fully cooperated with the association's demands. The audit indicated no other defalcations. His record shows no prior discipline.

The hearing panel found that Mr. Ressa's failure to preserve his clients' funds violated (CPR) DR 9-102. It further found that he is competent to continue his practice. It recommended that he be suspended for 1 year and that further disciplinary proceedings be suspended for 2 years under DRA 5.6(i). The Disciplinary Board accepted the panel's findings and conclusions but recommended disbarment.

Our disposition, although influenced primarily by the bar association's handling of this case, is not intended to fault

the association's efforts. At the time of Mr. Ressa's misconduct, the association had the difficult task of determining how to implement the recently enacted rules for attorney discipline. Confronted with finite resources, an expanding bar membership, and an increasing number of disciplinary cases, the association began experimenting with a variety of disciplinary alternatives. This is simply the rare case where one such alternative had unacceptable consequences.

The deferment alternative used in Mr. Ressa's case delayed the filing of a formal complaint until 1 year after his admission of misconduct, and then delayed the disciplinary hearing for several more years, until January 1979. Consequently, the Disciplinary Board's recommendation was not made until August 1979, nearly 4 years after Mr. Ressa's admission of misconduct. While the bar association acted in good faith, there is no evidence that the deferment was begun with a specified termination date. Apparently, Mr. Ressa's hearing was held only when the association decided it no longer wanted to pursue this experiment.

█ Now, approximately 5 years after the bar association learned of Mr. Ressa's misconduct, it recommends that we disbar him. While under other circumstances such a recommendation would be seriously considered, we believe it would be unfair at this time to accept it. Mr. Ressa has a right to have his case decided within a reasonable period of time. *See In re Hawkins,* 91 Wn.2d 497, 502–03, 589 P.2d 247 (1979); *Murrell v. Florida Bar,* 122 So. 2d 169 (Fla. 1960). The 3–year delay between his admission of misconduct and his disciplinary hearing, although not violative of due process, was unreasonable. Both the hearing panel and the Disciplinary Board found that, partially as a result of the delay, Mr. Ressa has suffered enough. Moreover, Mr. Ressa complied with all of the bar association's demands during the delay, and he could have justifiably thought the deferred prosecution would become the ultimate disposition of his case. The bar counsel in this proceeding characterized his behavior during that period as spotless. Testifying to

his good character, among others, were a former president of the state bar association and a superior court judge.

Our disposition is not intended to discourage good faith experimentation in this area. Rather, we reach a result substantially similar to that of the hearing panel. We order that Mr. Ressa receive a suspended 1–year suspension from practice during which time he shall pay all costs and attorney's fees accrued to date by the bar association.

ROSELLINI, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

BRACHTENBACH, J. (concurring in the result)—I concur in the result solely because of the peculiar facts of this case.

Were this case here under the ordinary disciplinary proceedings, I would adhere to the long established rule regarding trust funds as articulated in *In re Deschane*, 84 Wn.2d 514, 516–17, 527 P.2d 683 (1974):

> Those few lawyers who mishandle trust funds, who fail to maintain complete records of trust funds and who fail to account and deliver funds as requested are reminded that disbarment is the usual result.

(Citations omitted.)

STAFFORD, J., concurs with BRACHTENBACH, J.